**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **Michelle Hill,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-v-** | ) | **Civil Action No. 3:06-cv-4** |
| | ) | |
| **Joanne B. Barnhart,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MEMORANDUM & ORDER**

---

### I. SUMMARY OF DECISION

Because there is substantial evidence in the record as a whole supporting the

Commissioner's final decision the Defendant's Motion for Summary Judgment is **GRANTED**

and the Plaintiff's Motion for Summary Judgment is **DENIED.**

### II. STATEMENT OF THE CASE

Michelle Hill (hereafter "Ms. Hill") filed an application for Supplemental Security

Income (SSI) under sections 1602 and 1614(a)(3)(A) of Title XVI of the Social Security Act, 42

U.S.C. § 1381a under a protective filing dated March 25, 2003. Tr. of Record, 46-49.   The

application was denied by the Administration upon initial consideration.  Tr. of Record, 33-36.

Ms. Hill requested a de novo hearing before an Administrative Law Judge (ALJ), indicating that

she wished the opportunity to appear in person at the hearing. Id. at 37.  A hearing was

conducted in front of ALJ David K. Fromme in Springfield, Missouri, on December 17, 2004. Id.

at 15.  Ms. Hill appeared personally along with her counsel, Sheila Rennison.  In addition to

testimony by Ms. Hill, the ALJ heard testimony from a Vocational Expert, Michael Lala. Id.

The ALJ issued his opinion on June 24, 2005, that Plaintiff was not disabled. Id. at 12-

26. Ms. Hill requested a review of the hearing decision before the Appeals Council. Id. at 11.

The Appeals Council denied Ms. Hill's request for a review of the hearing panel decision on

November 8, 2005. Id. 7-9. This made ALJ Fromme's decision "the final decision of the

Commissioner of Social Security in [Hill's] case." Id. at 7.

This civil action ensued. Ms. Hill filed a Complaint in the above-captioned matter on

January 6, 2006. Hill v. Barnhart, Clerk's Docket No. 1 (Jan. 6, 2006). Service was effectuated

with a return being filed with the Court on January 24, 2006. Id. at Clerk's Docket #3.   The

United States filed an Answer in the matter on February 24, 2006. Id. at Clerk's Docket No. 4.

Ms. Hill filed a Motion for Summary Judgment on May 8, 2006. Id. at Clerk's Docket No. 8.

The Commissioner of Social Security filed a cross motion for Summary Judgment on June 2,

2006. Id. at Clerk's Docket No. 10. An Amended motion for Summary Judgment was filed by

the Commissioner on June 15, 2006. Id. at Clerk's Docket No. 12.

### III. DISCUSSION

A District Court reviews the Commissioner's findings to determine whether or nor not

the Commissioner's findings are supported by substantial evidence in the record as a whole.

Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005). Substantial evidence is less than a

preponderance of the evidence, but is "relevant evidence that a reasonable mind would accept as

adequate to support the Comissioner's conclusion." Id. (quoting Young v. Apfel, 221 F.3d 1065,

1068 (8th Cir. 2000). As long as there is substantial evidence in support of the Commissioner's

decision, the Court may not reverse because it would have decided the case differently. Haley v.

Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, the Court finds it

possible to draw two inconsistent positions from the evidence and one of those positions

represents the ALJ's findings, the Court must affirm the ALJ's decision.  Pearsall v. Massanari,

274 F.3d 1211, 1217 (8th Cir. 2001).

The Commissioner's regulations set forth a five-step sequence of evaluating whether a

disability claim is payable.  See, Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)(citing 20

C.F.R. §§404.1520(a)-(f)).     An individual claiming disability benefits has the burden of proving

he or she is unable to return to the type of work in which he or she was formerly engaged due to a

medically determinable physical or mental impairment that has lasted or can be expected to last for

a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A); Barnhart v. Walton,

535 U.S. 212, 220 (2002).  The Act defines a "physical or mental impairment" as "an impairment

that results from anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.

§1382c(a)(3)(A).   If the claimant succeeds, the burden of persuasion shifts to the Commissioner

to establish that the plaintiff can perform some other type of substantial gainful employment in the

national economy.  Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994).

The claim is analyzed pursuant to a five-part test: (1) is the claimant currently engaged in

substantial gainful activity? (2) Does the claimant have a severe impairment or combination of

impairments? (3) Does the impairment meet or equal an impairment listed at 20 C.F.R. pt. 404,

Subprt. P, app. 1?; (4) Does the impairment prevent the claimant from doing past relevant work?;

and (5) Does the impairment prevent the claimant from performing any other work that exists in

the regional or national economy in significant numbers?  Pearsall v. Massanari, 274 F.3d 1211,

1217 (8th Cir. 2001); See, 20 C.F.R. §404.1520 (2002).  When a determination that an individual is

or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary.  See

Bartlett v. Heckler, 777 F.2d 1318, 1319 (8th Cir. 1985).  Only at the final stage is it permitted to

consider the claimant's age, education and work experience in light of his or her residual functional

capacity.  McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.1520

(2002).

Ms. Hill concedes that based on the evidence actually considered by ALJ Fromme, there

was substantial evidence in the record to conclude that Ms. Hill retains the residual capacity to

perform other work. Hill v. Barnhart, Brief in Support of Plaintiff's Motion for Summary

Judgment, 4, Clerk's Docket No. 9 (May 4, 2006).   Ms. Hill contends, however, that ALJ

Fromme failed to consider relevant evidence and that the failure led to the conclusion that the

claimant retains residual functional capacity to perform other work.  Essentially Ms. Hill asserts

(1) the ALJ improperly discounted her Raynaud's Phenomena, contrary to established precedent

and the Social Security Regulations relating to *de minimus* medical conditions; (2) the ALJ's

conclusion that the Raynaud's Phenomena was *de minimus* led to an improper exclusion of the

Raynaud's Phenomena in any of the hypothetical questions posed to the vocational expert Mr.

Lala, which rendered the opinions unreliable.

Ms. Hill also contends that the ALJ and the vocational expert improperly neglected to

take into account her mental health issues which renders the conclusion that she retains the

ability to engage in substantial gainful activity unreliable.

A *de minimus* impairment is one that by definition is not severe.  SSR 96-3 provides that

an impairment should be considered "not severe" if it is "a slight abnormality that causes no

more than minimal limitation in the individual's ability to function independently, appropriately

and effectively in an age-appropriate manner."  In a work context an impairment is *de minimus* if

it is such a slight abnormality that it would not be expected to interfere with the individual's

ability to work. See Brown v. Bowen, 827, F.2d 311, 312 (1997).[1]

The question squarely presented is whether there is substantial evidence in the record that

the Raynaud's Phenomena was of such a character that it could be rightly described as a slight

abnormality that could not reasonably be expected to interfere with Ms. Hill's ability to work.

At the hearing Ms. Hill testified that her hands were discolored and constantly swollen as

a result of her Reynaud's Phenomena, and that the pain, numbness and discoloring extended

between the wrist and elbow.  Tr. 345-47.  Ms. Hill also reported symptoms of Raynaud's

Phenomena including pain, discoloration of her hands, numbness, and swelling which was worse

in the cold and which she claims was aggravated by rheumatoid arthritis.  Tr. 265[2],  264[3],

272[4],  280[5].   A careful review of the medical record reflects that Ms. Hill's physicians

---

[1]  In Hill's brief she asserts that Brown v. Heckler, 786 F.2d 872 (8th Cir. 1986) controls and that under that decision an impairment is *de minimus* only if "it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  In fact Brown v. Heckler was vacated as a result of the decision in Brown v. Yuckert, 482 U.S. 137 (1988).  See Brown v. Bowen, supra.  In Brown v. Bowen, the court remanded with instructions that the trial court review the facts of the case consistent with the Yuckert standard, which is that "only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking the subsequent steps of the sequential evaluation process."  Brown v. Bowen, at 312.

[2]  On March 22, 2004, Ms. Hill reported that she had noticed "her hands and fingers turning red and when they get cold actually an ashen gray color."  Dr. Ellis concluded that Ms. Hill suffered from Raynaud's Phenomenon and prescribed a calcium channel blocker "to hopefully help with the Raynaud's."

[3]On April 21, 2004, Dr. Ellis notes ". . . Raynaud's phenomenon which has improved on a calcium channel blocker, Cardizem LA 180 mg daily.  She is having some mild swelling in her hands and feet though."

[4]On August 31, 2004 Ms. Hill reported to Dr. Ellis that she was "having pain in her hands, especially the MCP joints.  Pain radiates up her arms to her shoulders."  Dr. Ellis described this as "possible inflammatory arthritis."

[5]As a result of Ms. Hill's complaints of pain she was seen by a rheumatolgist, Dr. Anne Winkler,  who indicated on November 3, 2004  that "I see no etiology for her pain.  I see absolutely no signs of rheumatoid arthritis and if it is that she does have a positive rheumatoid factor, then it is on the basis of hepatitis C.  For completeness

apparently believed that her Raynaud's Phenomena was being successfully treated and that it

posed few, if any, problems with her life activities.  Against this is juxtaposed Ms. Hill's

continuing complaints of pain in her joints and in her extremities.  A referral was made to Dr.

Anne Winkler, a rheumatologist, to have an evaluation for arthritis. Tr. at 280.  Dr. Winkler

determined that there was "no evidence of rheumatoid arthritis" and she further opined that "if it

is that she does have a positive rheumatoid factor, then it is on the basis of hepatitis C." Id.  It is

interesting to note that Dr. Winlker suspected that a psychological issue was present.  Id. at 281.

At the hearing before the ALJ, Ms. Hill described her pain and discomfort arising from

the Raynaud's Phenomena and her arthritis.  This is the only evidence that would support a

conclusion that the Raynaud's Phenomena was severe enough to interfere with her ability to

work.  The ALJ specifically found that these complaints were "not fully credible." Tr. at 25.

The Courts give deference to the findings of the ALJ when they are supported by good

reasons and substantial evidence. Pense v. Barnhart, 152 Fed. Appx 954, 955 (8th Cir. 2005);

Johnson v. Apfel, 240 F.3d 1145, 1149 (8th Cir. 2001). In the instant case the ALJ found that

while some of Ms. Hill's complaints were credible, others were not consistent with his

observations and the medical records.  These statements appear to be true on the record as a

whole, thus, the Court gives deference to the ALJ's credibility determinations.

Under these circumstances it appears that the ALJ's decision as relates to the Raynaud's

Phenomena is supported by substantial credible evidence in the record and is entitled to be

affirmed.

---

sake, we will go ahead and check a bone scan and we will also check an MRI to check for potential disk problems."
Dr. Winkler noted "normal bone scan–minimal DDD lumbar."  The Court assumes that "DDD" means–degenerative
disk disease.  More importantly Dr. Winkler noted "I suspect there are some significant psychological issues
ongoing in this particular patient." Tr. at 280-81.

Ms. Hill also contends that the ALJ committed error in the handling of the Residual Functional Capacity evidence.  Her claim is that the ALJ should not have relied on the RFC for a number of reasons: (1) that the report is the product of a non-medical officer and is therefore unreliable; (2) that the RFC report is overtly inconsistent with the other evidence in the record; (3) that the report is the product of a mechanical and rote evaluation of the medical records; and (4) that the ALJ's hypothetical questions to the Vocational Expert failed to take into consideration the actual facts and circumstances confronted by Ms. Hill.

Under 20 C.F.R. § 416.1015(c) when making a disability determination the state agency is authorized to make determinations based on the medical and non-medical evidence in its files. The determination may be made by either (1) the state agency medical or psychological consultant and a state agency disability examiner or (2) the state agency disability examiner alone when there is no medical evidence to be evaluated. 20 C.F.R. § 416.1015( c )(1) &(2).

In the instant case, the state agency disability examiner and a state agency appointed psychological consultant each filed reports on functional capacity.[6]  Ms. Hill objects to the use of the reports on two general grounds: (1) that the reports were aged, being nearly two years old at the time that the decision was made; and (2) that the reports are rote, superficial, and not helpful in making a determination of disability.  More specifically, the claimant asserts that Ms. Cochrane's report is both incompetent and rote.

In reviewing Ms. Cochrane's report there are a number of things worthy of note.  First, it is difficult to ascertain exactly what evidence she relied upon in the record to reach her

---

[6]The report of Residual Physical Functional Capacity Assessment was prepared by Cathy Cochrane, a disability examiner on September 19, 2003.  The Psychological Report was prepared by Dr. Francis Anderson on September 8, 2003.

conclusions; nonetheless, it does appear that nothing in the assessment is openly inconsistent

with the other evidence in the record.  Ms. Hill's subjective complaints may be somewhat at

odds with the specific findings of the Physical Functional Capacity Assessment, but, both the

evaluator and the ALJ found those complaints were only partially credible.  It would have been

preferable to have the specific areas where the credibility of Ms. Hill was in doubt explained

with greater detail.  However, it is possible to review all of the findings, conclusions, and the

transcript of record and reach conclusions as to the nature of the credibility determinations made

by both Ms. Cochrane and ALJ Fromme.

Likewise it would have been preferable to see a more detailed explanation of the work

limitations, if any, Ms. Hill's psychiatric conditions had on her ability to perform substantial

gainful activity.  Even so, the description of her psychological status and functioning is sufficient

to understand the findings in Dr. Anderson's report.  Once again, the findings appear to be

consistent with the other evidence in the transcript once one takes into account the ALJ's finding

that the subjective reports of the limitations that confront Ms. Hill lack credibility.

The one area that gives the Court pause is the failure of any of the evaluators to take into

account the possibility that Ms. Hill may be suffering from psychosomatic illness.  There are

certainly indicators in the record that might lead one to conclude that this is a possibility,

including Dr. Winkler's rather general statement that "I suspect there are some significant

psychological issues ongoing in this particular patient." Tr. at 280-81.  While the Court might

well have remanded this matter for further consideration of the possible psychosomatic nature of

Ms. Hill's illness had it been initially the Court's decision to make, the fact is that ALJ Fromme

had the opportunity to see Ms. Hill and to question her.  At the end of that proceeding he

8

believed that she had credibility problems, and this decision appears to be based on substantial

evidence and good reasons. <u>Johnson v. Apfel</u>, 240 F.3d 1145, 1149 (8th Cir. 2001).

In reviewing all of the other objections, it appears that once the Court takes into

consideration the credibility determinations of ALJ Fromme, there is substantial evidence in the

record to conclude that Ms. Hill retains the residual capacity to perform other work.

**IT IS HEREBY ORDERED** that the Plaintiff's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendant's motion for summary judgment is

**GRANTED.**

**IT IS SO ORDERED.**

Dated this 29th day of January, 2007, at Fargo, North Dakota.


      /s/   Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Judge
District of North Dakota